IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

GENERAL ELECTRIC CAPITAL
CORPORATION,

                Plaintiff,

v.                                          CIVIL ACTION NO.   1:11-cv-00315

JAMES I. BISHOP,
JOSEPH R. SARGENT, and
DANIEL S. BISHOP,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Plaintiff's Motion for Summary Judgment* (Document 24).   To date, Defendants James I. Bishop and Daniel S. Bishop have not filed an opposition or other response.   Upon consideration of the motion and the entire record herein, the Court finds that Plaintiff is entitled to summary judgment as a matter of law.

*I.*

Plaintiff, General Electric Capital Corporation, with its principal place of business in Connecticut, provides financing for equipment and vehicles, including those used in the construction industry.   (Affidavit of Clarisa Skinner ("Skinner Aff.") (Document 24-1) at ¶ 4.) On May 7, 2008, Plaintiff loaned monies to D & J Trucking, Inc., for the purchase of three 2007 Dump Trucks. (Pl.'s Ex A-C (Documents 24-2 – 24-4.)   In each transaction, the parties executed a

Security Agreement.[1] The signatory for D&J Trucking was its president, Joseph Sargent. Documentation supporting each transaction also included: (1) "Schedule A" identifying the collateral as the dump truck and the vehicle's serial number, model, description and manufacturer; (2) "Seller's Agreement (3 party Retail or Direct Loan/Lease)" executed by Worldwide Equipment, Inc. (seller) and identifying Plaintiff as its successor and assign; and (3) "Extension Agreement – Three Party" executed by GE Capital and D&J Trucking, as well as, Defendants James I. Bishop, Daniel S. Bishop and Joseph Sargent as Guarantors.[2] (*Id*.) On May 30, 2008, D&J Trucking purchased two additional dump trucks by financing the purchase though GE Capital. (Pl.'s Ex D and E (Documents 24-5 - 24-6.) The documentation for each transaction is substantially similar to that supporting the May 7, 2008 transactions with the exception of the "Extension Agreement – Three Party." (*Id*.)

Relevant to the instant dispute, each Security Agreement provides that: the "Buyer [D&J Trucking Inc.,] warrants and agrees that the Collateral [the dump truck] was delivered to and accepted by the Buyer in satisfactory condition"; that the Seller will retain the title to the Collateral, but that the "Buyer . . . grants Seller a first and perfected security interest in the Collateral to secure payment of the Time Balance"; that an event of default is defined by, among other things, the Buyer failing to "pay when due any amount owed by it to Seller, any assignee or any affiliate, successor or assign of either of them under this agreement" or "Buyer defaults under

---

[1] D&J Trucking, Inc. purchased each truck for approximately $141,000. The fifth dump truck was slightly more expensive. The Total Time Sale Price for each truck was approximately $180,487.20 including finance charges and other fees. The annual percentage rate of interest was 9.95%. (*See* Pl.'s Ex. A-E.)

[2] The Court has reviewed each exhibit that contains this Extension Agreement. In each instance, the Court finds the exhibit to be illegible. Therefore, the Court has not considered the same in its determination here. Upon consideration of the entirety of the record, the Court found the exhibit, or what may be represented therein, to be immaterial to the final disposition of Plaintiff's motion. In the future, the Court instructs counsel to ensure that submitted exhibits are properly reviewable. If an electronic version is not readable, counsel shall submit a paper version to the Court and opposing counsel.

any guaranty . . . or other agreement[]"; and"[u]pon the occurrence of an event of default, and at any time thereafter as long as the default continues, Seller may, at its option, with or without notice to Buyer declare this agreement to be in default . . . declare the indebtedness . . . to be immediately due and payable" (Pl.'s Ex. A, Security Agreement, ¶¶ 1.2, 2.1, 5.1, 5.2.) The Security Agreement also provides for the repossession of the collateral; the buyer's payment of the "[e]xpenses of retaking, holding, preparing for sale, selling and the like [which] shall include . . . reasonable fees of any attorneys retained by the Seller, and . . . other legal expenses incurred by Seller"; the Buyer's agreement to be "liable for all amounts due . . . including any deficiency remaining after any disposition of the Collateral," and the Buyer's agreement to pay "acceleration interest on the debt. (*Id*. at 5.2-5.3.)

On May 7, 2008, Joseph Sargent and the Bishop Defendants also executed a "Continuing Guaranty" wherein they guaranteed to Worldwide Equipment, Inc., its successors, endorsers and assigns (collectively called GE Capital) that D&J Trucking, Inc." would fully perform and pay/discharge all of its "present and future liabilities, obligations and indebtedness to GE Capital." (Pl.'s Ex. F (Document 24-7.)) Of import, Sargent and the Bishop Defendants agreed that:

> [i]f the Company fails to pay the indebtedness promptly as the same becomes due, or otherwise fails to perform any obligation under any of the Agreements, each Guarantor agrees to pay on demand the entire indebtedness and all losses, costs, attorneys' fees and expenses which may be suffered by GE Capital by reason of the Company's default or the default of any Guarantor . . . and agrees to be bound by and to pay on demand any deficiency established by the sale of any of the Agreements or Security, all without relief from valuation and appraisement laws and without requiring GE Capital to . . . proceed against the Company by suit or otherwise[.]

(*Id*.)

At some point thereafter, D&J Trucking, Inc. failed to make payments for the five dump trucks. Plaintiff accelerated the debt and sought payment from Sargent and the Bishop Defendants as guarantors. (Skinner Aff. ¶¶ 13-14, 16.) When the obligation was not paid, Plaintiff initiated this action to assert a breach of contract claim as to Defendants James Bishop, Daniel Bishop and Joseph Sargent.[3] Additionally, subsequent to bringing this lawsuit, Plaintiff recovered and sold the trucks. (Skinner Aff. ¶¶ 20-21) (the first four dump trucks were sold on November 2, 2010; the fifth truck was sold on December 9, 2010 by one of Plaintiff's affiliates, EFS Funding, LLC; Plaintiff received a "net total amount . . . [of] $229,587.13 after expense of $7,912.86."); (Skinner Aff., Ex.2, Equipment Purchase Invoice and Bill of Sale (Document 24-1)) (The trucks were all sold back to Worldwide Equipment for $47,500.00 each.)

## II.

Plaintiff moves for summary judgment to recover the monies due to it in light of Plaintiff's failure to pay as agreed. Plaintiff contends that the amount owed by the Defendants is not in dispute. It seeks the entry of judgment against Defendants, jointly and severally. (Plaintiff's Motion for Summary Judgment ("Pl's. Mot.") (Document 24) at 2.) Plaintiff asserts that "after applying pre-default late fees and default interest following the default, and after crediting the accounts with the net proceeds of the sale of the Equipment, the amounts due and owing under the Security Agreements and Guaranty, as of May 25, 2012, not including attorneys' fees, equal

---

[3] On January 4, 2012, the Clerk of Court entered an entry of default against Defendant Joseph R. Sargent. (Document 15). This Court ordered Plaintiff to file the appropriate motion and affidavits or to arrange the necessary evidentiary hearing to facilitate the entry of a default judgment against Sargent within twenty days of the order (Document 14). Plaintiff did not file the necessary motion. However, Plaintiff advised the Court that Sargent was engaged in bankruptcy proceedings and that it was agreeable to dismiss Sargent from this suit. On January 27, 2012, the Court dismissed the claim as to Defendant Sargent without prejudice. (Document 21). In the Affidavit of Clarisa Skinner, attached to the instant motion, it is asserted that Sargent "scheduled GE Capital as a creditor [in his Chapter 7 bankruptcy petition] and received a Discharge." (Pl.'s Ex.A, Skinner Aff. (Document 24-1) n.1).

4

$532,500.94, which includes $351,521.52 in principal and $180,979.42 in interest. In addition, per diem interest is $174.86 after May 25, 2012." (Skinner Aff. ¶ 24.) Plaintiff attests that this amount due is based on the loan agreements and this amount accounts for the credit to the loan balance for the proceeds of the sale of the trucks. (*Id*.) To date, Defendants have not filed an opposition or other response to Plaintiff's motion.[4]

### III.

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. (*Id*.) The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012

---

4   Subject matter jurisdiction is based on diversity jurisdiction given Plaintiff's allegations that it is a Delaware Corporation with its principal place of business in Connecticut, the Defendants are citizens of West Virginia, and the amount in controversy exceeds $75,000.

WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Rule 56 of the Federal Rules of Civil Procedure requires that,

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. Moreover, in considering a motion for summary judgment, "the district court 'must review the motion even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'" *Robinson v. Wix Filtration Corp*, LLC, 599 F.3d 403, 409 n.8 (4th Cir. 2010) (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993.)

*IV*.

The essence of this litigation is that Plaintiff alleges that Defendants have defaulted on the loans made to D&J Trucking, Inc., and that as guarantors they have failed to pay as required by the

guaranty agreement. The complaint asserts a breach of contract claim. "In order to establish a claim for breach of contract under West Virginia law, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the existence of a valid, enforceable contract; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result." *Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals Group, Inc.*, Civil Action No. 2:09-cv-1278, 2011 WL 3022239, at *10 (S.D. W. Va. July 22, 2011) (citing *Exec. Risk, Inc. v. Charleston Area Med. Ctr. Inc.*, 681 F.Supp.2d 694, 714 (S.D. W. Va. 2009)).

Based on a review of the pleadings in this case, and now, Plaintiff's motion for summary judgment, the opportunity for dispute is minimal. Unquestionably, Defendants executed a Continuing Guaranty contract agreeing to be responsible for the obligations of D&J Trucking, Inc., to Worldwide Equipment, Inc., (seller of dump trucks), its successors or assigns, here Plaintiff. Specifically, Defendants agreed "to pay on demand the entire indebtedness and all losses, costs, attorneys' fees and expenses which may be suffered by GE Capital by reason of the [D&J Trucking, Inc.'s] default or the default of any Guarantor . . . and agrees to be bound by and to pay on demand any deficiency established by the sale of any of the Agreements or Security[.]" The Court finds this language is not ambiguous and it places a duty upon the Defendants to perform. "A valid written instrument which expressed the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." *Bennett v. Dove*, 277 S.E.2d 617, 619 (1981) (citations omitted). It is not disputed that Plaintiff financed the purchase of the five trucks for D&J Trucking, Inc., and upon D&J Trucking's failure to pay, accelerated the debt and sought the

payment from Defendants, as guarantors. Defendants have not paid the balance owed to Plaintiff, despite Plaintiff recovering the dump trucks, notifying Defendants that the trucks would be sold at an auction, selling the trucks and crediting the money received against Defendants' balance. The non-payment of the loan constitutes a default and breach of the parties' agreement under the Security Agreement and Guaranty. The Guaranty also provides that Defendants would be responsible for costs and fees, including attorney fees, to Plaintiff in recovering and selling the trucks and securing its payment of the loan.

As noted above, Defendants, who are now represented by counsel, have failed to file an opposition or other response to this motion. Their failure to respond means that they have neglected to come forward with any evidence to dispute that they are liable to Plaintiff under the terms of the Continuing Guaranty in the amount sought by the Plaintiff. Defendants' only defense to this litigation comes from their responsive pleading, wherein they admit that D&J Trucking, Inc., borrowed money from Plaintiff for the purchase of five dump trucks; that a security agreement in favor of Plaintiff was executed when the monies were obtained; that they guaranteed all of D&J's obligations to Plaintiff then existing and arising after the execution of the guaranty; that they are in default of those payments; and that monies are due to Plaintiff. (Answer of Defendants James I. Bishop and Daniel S. Bishop (Document 19), ¶¶ 11-18.) Conversely, Defendants deny the specific amount owed to Plaintiff as alleged in the complaint, whether Defendants owe Plaintiff any attorney fees and costs in moving to collect on the loans, and Plaintiff has "substantially performed" its obligations under the Security Agreements and Guaranty. However, at this stage of litigation, a party must move beyond its pleading to show a

genuine dispute as to any material fact. The Court is permitted to view the unchallenged or unaddressed allegations of the Plaintiff as undisputed. Fed.R.Civ.Pr.56(e)(2).

In a nutshell, the Court finds, from the uncontested facts in this case, that the parties had a contract for the payment of the vehicles; Defendants failed to pay, thereby breaching the contract, and that after repossessing and selling the trucks, Plaintiff was still owed a balance for the vehicles; the parties' agreements provides for interest costs for the Defendant's failure to pay and that Defendants are liable for the amount sought by Plaintiff. The Court has reviewed the security agreement documents and the Skinner affidavit and finds that Plaintiff is entitled to $532,500.94, plus accruing interest and reasonable attorney fees, as requested.

*V.*

For the foregoing reasons, the Court finds that no genuine dispute of any material fact exists, and that Plaintiff is entitled to summary judgment as a matter of law. Therefore, the Court does hereby **ORDER** that Plaintiff's Motion for Summary Judgment (Document 24) be **GRANTED**. Within fourteen (14) days of this order, Plaintiff is **DIRECTED** to file an appropriate motion supporting its request for attorneys' fees as sought under the parties' agreements. (Pl.'s Mot. at 11.)

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: December 12, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA